UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SAMMY JAMES DOUSE,

          Plaintiff,

vs.                                    Case No. 2:08-cv-29-FtM-29SPC

ROBERT A. BUTTERWORTH Secretary, Department of Children & Families Services, sued in individual and official capacity; TIMOTHY J. BUDZ Executive Director, Florida Civil Commitment Center, sued in individual and official capacity; BRYANT RUNGE Investigation Officer, Florida Civil Commitment Center, sued in individual and official capacity; GEORGE EMANOILIDIDS Assistant Clinical Director, Florida Civil Commitment Center, sued in individual and official capacity; LILA DELLER Clinical, Florida Civil Commitment Center, sued in individual and official capacity; GEORGE GINTOLI Vice President, Florida Civil Commitment Center, sued in individual and official capacity; K. DAVIDSON T.S.T. Employee, Florida Civil Commitment Center, sued in individual and official capacity,

          Defendants.
_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint filed on behalf of Defendants Budz, Runge, Emanoilidis, Deller, Gintoli and Davidson (collectively the "GEO Defendants")(Doc. #41, the "GEO Motion") and

Defendant Butterworth's Motion to Dismiss Second Amended Complaint and Motion to Join in Co-Defendants' Motion to Dismiss (Doc. #42, the "Butterworth Motion"), both which were filed on November 10, 2008. On January 7, 2009, Plaintiff filed on a response to the Defendants' motions (Doc. #43, Response). Plaintiff attaches to his Response the following: Affidavit of Emmanuel Baker (Doc. #43-2); Plaintiff's Affidavit (Doc. #43-3); and GEO Policy and Procedure Manual, Behavior Management (Doc. #43-4).

**I.**

Plaintiff, who is involuntarily civilly confined at the Florida Civil Commitment Center pursuant to Fla. Stat. § 394.910, et. seq. ("Jimmy Ryce Act"), is proceeding on his Second Amended Complaint (Doc. #38) filed pursuant to 42 U.S.C. § 1983 and § 1985(2). Plaintiff generally alleges a myriad of state and federal claims. As set forth below, Plaintiff states that he is being subjected to:

> Slander, unlawful restraint resulting in a loss of freedom of movement and personal security (including-freedom to attend religious services, hindrance of access to the courts, inadequate fresh air/smoke break times, and being confined with persons whom the facility considered too dangerous to release onto the compound), administratively sentenced to the hardship of unequal privileges (compared to similarly situated persons), subjected to inadequate due process procedures not statutorily implemented (but unlawfully approved by DCF), malicious violations of the unpromulated written policy (which allow these inadequate, falsified documents being placed in his file (which the state may try to use to prejudice Plaintiff in any future hearings or trials; thus giving him the right to seek Injunctive Relief), thus violating Plaintiff's equal protection and due process rights afforded by

>     U.S.C.A. 14th Amendment, and Article 1 §2(Equal
>     Protection) and Article 1 §9 (Due Process) of the Florida
>     Constitution.

Second Amended Complaint at 1. In support of the above generalized statement of claims, the Second Amended Complaint contains the following factual narrative, which is presumed true for purposes of ruling on these Motions.

On October 26, 2007, Defendant Davidson "falsified an incident report against Plaintiff." Id. at 3, ¶1. The incident involved inappropriate conduct of a "sexual nature," and resulted in Plaintiff being placed in "secure management." Id. A copy of the "Notice of Behavior Management" report is attached to Plaintiff's original complaint (Doc. #1-2 at 3). While in secure management, Plaintiff was required to be handcuffed whenever he left his cell. Id. at 6, ¶9. Plaintiff remained in secure management until November 5, 2007. Id. at 5, ¶7. Plaintiff did not have a hearing in connection with the incident during his time in secure management. Id. at 6, ¶8. Also, during this time, his personal property was "disrespectfully rummaged through" and items were disposed of, or stolen, by unidentified FCCC staff. Id. FCCC policy "requires that an investigation be conducted within 72 hours after a Behavioral Management Report has been written." Id. at 4, ¶3. Plaintiff avers that Defendant Runge, the facility's investigator, did not commence an investigation until November 16, 2007. Id. at 7, ¶10.

On November 27, 2007, Plaintiff had a disciplinary hearing before Defendants Emanoilidis and Deller, after which he was found guilty of the conduct set forth in the incident report, and Plaintiff's "Care privilege level"[1] was lowered. Id. at ¶11. Because his "Care privilege level" was lowered, Plaintiff had restricted access to certain "facility privileges-including computer lab access . . ." Id. at 7-8, ¶12.

Plaintiff submitted a grievance to Defendant Budz arguing that the disciplinary report should be "expunged" because Defendant Runge did not conduct an investigation into the incident within 72 hours as required by FCCC policy. Id. at 8, ¶13. A copy of Plaintiff's FCCC Resident Grievance, dated October 26, 2007, concerning the disciplinary committee's findings is attached to Plaintiff original Complaint (Doc. #1-2 at 1, Grievance). On November 30, 2007, Defendant Budz denied Plaintiff's grievance. Second Amended Complaint at 8, ¶13. In denying the Grievance, Budz stated:

> The policy states the investigation will be initiated within 72 hrs. not completed within 72 hrs. Findings that sexual contact occurred are valid.

Grievance at 1.

Plaintiff appealed Budz' denial of his grievance to Defendant Gintoli, again referencing the FCCC policy that investigations are

---

[1] The Care system "was developed by the FCCC Clinical Department." The "Privilege Levels 1-5 . . . determines privileges allowed to residents." Second Amended Complaint at 5, n. 1.

-4-

to be initiated within 72 hours.  Second Amended Complaint at 8, ¶14.  Defendant Gintoli denied Plaintiff's appeal.  <u>Id.</u>  A copy of Plaintiff's FCCC Resident Grievance Appeal, dated December 25, 2007, is attached to Plaintiff original Complaint (Doc. #1-2 at 2, Appeal).

Plaintiff argues that "Defendants Budz, Gintoli, and Emanoilidis gave express approval of the violations" and "allow[ed] Plaintiff to be punished without any due process."  Second Amended Complaint at 8, ¶15.  Further, Plaintiff submits that "Defendant DCF knew or should have known these violations were committed against Plaintiff" and are "guilty of implicit approval to violate due process and equal protection rights of FCCC residents. . ." <u>Id.</u> at ¶16.

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004); <u>Gross v. White</u>, No. 08-14411, 2009 WL 2074234 (11th Cir. July 17, 2009).  The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  <u>Christopher v. Harbury</u>, 536 U.S. 403, 406 (2002); <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003).  However, the Court need not accept unsupported conclusions

of law or of mixed law and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). While a plaintiff is not required to provide a "detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1269 (11th Cir. 2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007)). Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1968-69.

With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-838 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)); Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. See GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367, 1368 (11th

Cir. 1998) (stressing "that the heightened pleading requirement is the law of this Circuit"). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)(citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nevertheless, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

Title 42 U.S.C. Section 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that (1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, where a plaintiff seeks to impose liability on one who is not an active participant in the alleged constitutional deprivation, that plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Williams v. Bennett, 689 F.2d 1370, 1380-1381 (11th Cir. 1982).

The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Monell v. Dep't of Soc. Serv., 436 U.S. 659, 690-692 (1978). Instead, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Absent personal participation by a defendant, a plaintiff must show an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)(quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326

F.3d at 1360 (quoting <u>Gonzalez</u>, 325 F.3d at 1234)(remaining citations omitted).

## III.

The gravamen of Plaintiff's claim is that because Defendant Runge did not adhere to an internal FCCC policy that required investigations to be initiated within 72 hours, he was denied due process because the disciplinary report he was issued for sexual misconduct was not dismissed by FCCC officials. Peripherally, Plaintiff also claims that items of his personal property were lost or stolen. Due to his "Care privilege" being lowered, Plaintiff claims he was precluded from "legal research materials and access to the courts." Second Amended Complaint at 7-8, ¶12. Additionally, Plaintiff states that he was denied the "right to religious services."

Defendant Butterworth, who is sued in both his individual and official capacities, seeks dismissal of the Second Amended Complaint on the basis that, *inter alia*, there is no allegations to support a claim under 42 U.S.C. § 1983 or § 1985 against himself or the Florida Department of Children and Families ("DCF"). <u>See generally</u> Butterworth Motion. In particular, Defendant Butterworth points out that the Second Amended Complaint contains no factual allegations against Defendant Butterworth in his individual capacity. <u>Id.</u> at 3. Instead, the Second Amended Complaint appears to attribute liability to Defendant Butterworth in his supervisory

capacity as Secretary of DCF, because all allegations in the Second Amended Complaint are directed at DCF.

The GEO Defendants seeks dismissal of the Second Amended Complaint on the basis that Plaintiff's limited confinement in secure management did not implicate a liberty interest sufficient to trigger the due process clause of the Fourteenth Amendment. GEO Motion at 5-6. Further, GEO argues that the failure of officials to adhere to its internal regulations do not give rise to a constitutional violation. Id. at 8.

Admittedly, the FCCC is not a prison and Plaintiff is not a prisoner. Troville v. Venz, 303 F.3d 1256. Nonetheless, the Court takes judicial notice that the State of Florida enacted the Jimmy Ryce Act, by which a person who is determined to be a sexually violent predator[2] is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). Further, the Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and

---

[2]A "sexually violent predator" is defined by the Act as any person who:

(a) has been convicted of a sexually violent offense; and
(b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

Fla. Stat. § 394.912(10) (2002).

-10-

protecting the public from these individuals." <u>Westerheide v. State</u>, 831 So.2d 93, 112 (Fla. 2002); <u>see</u> <u>also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[3] The state legislature, in its statement of "findings and intent," said that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)." Fla. Stat. § 94.910 (2000). Thus, it is axiomatic that residents at the FCCC who are considered "totally confined," must be subject to certain internal regulations much like those established by the Florida Department of Corrections. <u>See</u> Fla. Stat. § 394.912(11).

While residents at the FCCC are subject to internal regulations, the Court recognizes that they are afforded a higher standard of care than those who are criminally committed. The Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." <u>Youngblood v. Romero</u>, 457 U.S. 307, 322 (1982). Indeed, the involuntarily civilly committed

---

[3] "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. <u>See</u> Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." <u>Westerheide</u>, 831 So.2d at 99 n.6.

have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint. Id. The Eleventh Circuit similarly has held that "Youngberg establishes that the due process rights of the involuntarily civilly committed are 'at least as extensive' as the Eighth Amendment 'rights of the criminally institutionalized,' and therefore, 'relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Lavender v. Kearney, 206 Fed. Appx. 860 *2 (11th Cir. 2006)(footnote omitted, quoting Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)). Therefore, the case law that has developed under the Eighth Amendment sets forth the contours of the due process rights of the civilly committed. Id.

First, irrespective of whether officials adhered to the FCCC's internal regulation concerning the time period to commence an investigation, or whether the FCCC's internal regulations were "not statutorily implemented" as raised by Plaintiff, the Court finds Plaintiff has not alleged a violation of a right created by the United States Constitution or the laws of the United States. "Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right." Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002). Any argument that a violation of state law

-12-

gives plaintiff a viable substantive due process claim has been foreclosed by the United States Supreme Court. Lovins v. Lee, 53 F.3d 1208, 1211 (11th Cir. 1995)(citing Collins v. City of Harker Heights, Texas, 503 U.S. 115 (1992)). See also McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(*en banc*)(substantive rights created only by state law are not subject to substantive due process protection because substantive due process rights are created only by the United States Constitution). Therefore, no § 1983 claim is stated by virtue of an alleged failure by any FCCC official to comply with the tenets of the FCCC's internal regulation governing the time frame in which an investigation is to be commenced.

Nor does the fact that Plaintiff was temporarily restricted from unlimited access to the FCCC facility due to his limited placement in secure management confinement necessarily implicate Plaintiff's liberty interests in the instant matter. "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Bell v. Wolfish, 441 U.S. 520, 537 (1979); see also Sandin v. Conner, 515 U.S. 472, 483-84 (1995); Wilkinson v. Austin, 545 U.S. 209, 223 (2005). Whether a particular restriction is considered punitive is determined by whether the restriction imposed is for the purpose of punishment or whether it is incidental to some other legitimate governmental purpose. Bell at 538. Restrictions that are imposed in order to manage a facility or maintain the facility's security are examples

of permissive restrictions.  Id. at 540.  Here, based on the face of the Second Amended Complaint and the exhibits attached to the original complaint, Plaintiff was placed in secure management confinement while the incident involving Plaintiff and another resident who were alleged to have engaged in sexual misconduct could be investigated.

Thus, the Court finds Plaintiff's temporary confinement in secure management from October 26, 2007, until November 5, 2007 was not for punitive purposes or otherwise the type of atypical and significant deprivation to trigger Plaintiff's constitutional due process rights.[4]  Sandin v. Conner, 515 U.S. at 481 (Court concluded that focus of liberty interest is nature of deprivation); see also Al-Amin v. Donald, 165 Fed. Appx. 733, 738 (11th Cir. 2006)(court recognized that "[u]nder certain circumstances, administrative segregation is a necessary limitation of privileges and rights that incarceration demands").

Assuming *arguendo* that Plaintiff's due process rights were triggered by his temporary placement in secure management, it nonetheless is clear from the face of the Second Amended Complaint and the exhibits attached to the original complaint,[5] that

---

[4]The Court takes judicial notice that Plaintiff was taken to secure management on Friday, October 26, 2007, and was released five business days later, on Monday, November 5, 2007. See http://www.timeanddate.com.

[5]The Court can properly rely upon the documents attached to Plaintiff's original complaint because the exhibits were submitted
(continued...)

Plaintiff was afforded adequate constitutional due process. Plaintiff immediately was told the reason he was being placed on secure management status. See Doc. #1-2 at 3, FCCC Notice of Behavior Management dated October 26, 2007. Plaintiff was also asked if he had any witnesses he wished to call at the behavior management conference or if he had any documentary evidence he wishes to submit, to which he replied "no." Id. Plaintiff was afforded a Behavior Management Conference on November 27, 2007, at which he stated that he was "faking having sex to see what TST would do." See Doc. #1-2 at 5, FCCC Behavior Management Hearing Disposition. The committee members found "enough evidence to sustain charge" and recommended dropping Petitioner's "Care" level. Id. Plaintiff was provided an opportunity to appeal the panel's finding, which he did on November 30, 2007. See Doc. #1-2 at 1. Plaintiff's appeal was denied by Defendant Budz. Id. Plaintiff also appealed the denial of his grievance by Defendant Budz on December 25, 2007, which was also denied. Doc. #1-2 at 2. The Court finds that these procedures were more than adequate in providing Plaintiff with adequate due process. Sandin v. Conner, 515 U.S. at 485-86; Youngberg v. Romero, 457 U.S. 307, 320-21 (1982); Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cr. 2004).

---

[5](...continued)
by Plaintiff, are central to Plaintiff's claim, and were referenced in the Second Amended Complaint. Gross v. White, 2009 WL 2074234 at *5.

Consequently, the Court finds that the Complaint fails to state a claim for a violation of Plaintiff's due process rights.

Other than Plaintiff stating that his First Amendment access to court was denied and that he was denied "religious services," while in secure management, Plaintiff provides no factual allegations whatsoever in support of either of these First Amendment claims. Such bare assertions and conclusions fail to articulate a cause of action to survive a motion to dismiss. United Techs. Corp. v. Mazer, 556 F.3d at 1269.

Similarly, Plaintiff, in a wholly conclusory manner, claims that he was denied equal protection and asserts that his claims are also brought pursuant to 42 U.S.C. § 1985(2). The Second Amended Complaint provides no facts to support either an equal protection or § 1985 claim.

Plaintiff attaches to his Response an affidavit from another FCCC resident who states that three other residents who were caught masturbating had their disciplinary reports dismissed because a timely investigation was not commenced. See Affidavit of Emmanuel Baker, Doc. #43-2 at 1 and Affidavit of James Douse, Doc. #43-3 at 1. Putting aside whether the affidavit is based upon personal knowledge, the Court finds that Plaintiff's Second Amended Complaint can not be modified by affidavits or other papers submitted in response to a dispositive motion, and such documents attached to Plaintiff's Response will not be considered by the Court. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir.

1998). Further, even if the Court considered the affidavit, equal protection "does not require that all persons be treated identically." Hendking v. Smith, 781 F.2d 850, 851 (11th Cir. 1986)(citing Stanton v. Stanton, 421 U.S. 7, 14 (1975)). Rather, Equal Protection requires that "similarly situated persons be treated equally." City of Clebrune v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)(emphasis added). Thus, Plaintiff must allege that he was treated differently than any other FCCC residents who were caught engaging in similar conduct. The Second Amended Complaint fails to make any such allegation.

To articulate a cause of action under § 1985(2), a plaintiff must allege that two or more people conspired to (1) threaten, intimidate, or forcefully deter any party or witness from testifying truthfully or attending court, (2) injure a witness or party for attending court or testifying, (3) influence the verdict, or (4) hinder the course of justice in any manner with the intent or depriving a citizen of the equal protection of the law. 42 U.S.C. § 1985(2). Significantly, a § 1985 requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." United Brotherhood of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 835 (1983); Childree v. UAP/GA AG Chemical, Inc., 92 F.3d 1140, 1147 (1996). Plaintiff does not allege any facts that would support a finding that the Defendants' actions were the result of a racial or otherwise class-based discriminatory animus.

Therefore, Plaintiff has failed to sufficiently allege a claim pursuant to § 1985.  Thus, Defendants are entitled to have the § 1985 and equal protection claims dismissed.  Any other claims not discussed herein are deemed likewise without merit.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint filed on behalf of Defendants' Budz, Runge, Emanoilidis, Deller, Gintoli and Davidson (Doc. #41) and Defendant Butterworth's Motion to Dismiss Second Amended Complaint and Motion to Join in Co-Defendants' Motion to Dismiss (Doc. #42) are **GRANTED,** and Plaintiff's Second Amended Complaint is **DISMISSED**, without prejudice.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __13th__ day of August, 2009.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record